The first case this afternoon is in re Detention of Earl Sidney Davis and Mr. Babb and Fisher and Mr. Babb are you ready to proceed with your argument? Please do so. Please support Council. My name is Kevin Babb and I am here by appointment of the circuit court to argue this appeal on the basis of a gentleman by the name of Earl Sidney Davis. Mr. Davis is appealing the finding that was made by the circuit court that he is a person subject to confinement under the sexually violent persons act. Mr. Davis was convicted in the criminal court in 1990 with a term of 15 years. In 1998 he was scheduled for release and was released from the custody of the Department of Corrections. Shortly before his release from the Department of Corrections the state filed a motion on the sexually violent persons act asking that his confinement be extended on an indefinite basis. The sexually violent persons act is an act of a civil nature as opposed to a criminal nature so it does not provide for the rights that would attach in a criminal prosecution. On the basis of the state's initial petition and request for injunctive relief Mr. Davis was held for three and a half years until his case was called for trial in Madison County. Although as I said before the sexually violent persons act is a civil procedure rather than a criminal procedure the statute provides for a right to assistance by counsel. And in the Rainey case which I cited in my brief and other cases preceding it the courts have held that the right to counsel under the sexually violent persons act is analogous and in fact identical to the right to counsel in a criminal matter. And it provides for the same rights that the respondent would have under the sixth amendment before a criminal proceeding. So there's a right for effective assistance by counsel. The case was called for trial after about three and a half years after the petition was filed and at that time Mr. Davis appeared in court in Madison County. He was represented in the circuit court by appointed counsel, not me obviously. And at that time in relation to the calling of the case for trial and the preparation for trial the attorney who was appointed to represent Mr. Davis engaged in numerous acts of conduct be they acts or omissions which we believe violated his right to effective assistance of counsel to the point where the rights that he has under Strickland were violated. Now we know that the courts have in cases under the sexually violent persons act and in criminal prosecutions interpreting Strickland they have given admittedly a broad amount of latitude to counsel in terms of working up a case for trial and in terms of trying the case. However, the courts have also held in the Flynn case which we cite and the Bailey case which we also cite and discuss that there can come a point where the actions of counsel that are prejudicial to the interest of the respondent are such that the latitude which is frequently granted to trial counsel is held basically not to be effective. There are so many issues in terms of ineffective assistance of counsel that it reaches a constitutional Strickland level. And we cite those in our brief. Those are reflected in the record. But in essence, to summarize them, the most important aspects of the denial of ineffective assistance of counsel have to do with the fact that in the course of presenting the case for trial in Madison County, the plaintiff, or excuse me, the respondent, Mr. Davis, was advised by his attorney that he should waive his right to a jury trial, which he has in the statute, because if he did that, he would be released in four months from custody. His counsel told him that the trial judge would get mad at him and would take it out on him if he insisted on this constitutional right to trial. There were, in the course of the three and a half years during the time that he took the case to jury trial, issues as far as the plaintiff, the respondent, Mr. Davis, indicating that his attorney did not cooperate, did not communicate with him. Mr. Davis requested that his counsel file various motions on his behalf. And not only did counsel not do that, and these were primarily in nature of fry motions, having to do with the qualifications of the state's expert, not only did the appointed counsel not file those motions, but he affirmatively told Mr. Davis that he filed those motions and he failed to do so. So it's not just a question of the trial counsel disagreeing with the client in terms of appropriate trial strategy, but actually, in an affirmative sense, trial counsel said, I hesitate only because I don't want to make an indefensible statement, but I think the record is clear that the respondent's attorney indicated he was going to file certain plaintiffs. He told the respondent that he had done that and he simply hadn't done that. The nature of these prosecutions is that you tend to see the same experts on both sides, for the state and for the respondent. There are reports that were filed, and a comparison of those reports with other reports, which the respondent obtained on his own, indicates that those reports from the state's expert are of a cookie-cutter type nature, in the sense that they basically are provence documents which lay out the specific facts of the case and then come up with the same findings as to every respondent that the state asks to be evaluated. Despite the request of the respondent to cross-examine the state's experts on these bases and to bring out factual misstatements in the statements made by the state's experts, the respondent's lawyer failed to do that. Although, admittedly, there are cases where there might be issues where the conduct of counsel is a matter of judgment, it is our position in this situation that, given the totality of the facts of this case concerning the representation of trial counsel, and I would say to the court in particular, the affirmative misstatement that counsel made concerning filing, pleadings in the case, and also the misrepresentation that the trial counsel made where he told the respondent that he would be released in four months if he stipulated the facts. Did he say he would be or could be? He said he would be. He said he would be, because your brief says could be. Yes. No. But it wasn't a matter of prognostication. But your brief says could be. Page 10. The last paragraph. Waiver would result in a determination that the respondent could be released. Could be. I think, let's see, we cite to the record at page 363 that, and this is on page 4 of the, excuse me, page 5 of the brief, that, in fact, in his affidavit in opposition to his confinement, or in his post-trial motion, the respondent actually said that the representation would be released if he consented to trial on stipulated facts. So on the basis of those representations, he goes in, he signs the document, and obviously, the trial court, having a stipulation of facts before him, enters the finding of the Sexually Violent Persons Act. Second claim that we assert has to do with the failure of a knowing involuntary waiver of his right to trial by jury. This is a fact-specific type of analysis. And again, in our statement of facts, we talk about the particular facts that related to his situation. He was held in the Madison County Jail for about a week before, I'm sorry, for three days, four days before the trial started. Under adverse conditions, they were overcrowded. He had to sleep, or try to sleep on the floor without a mattress or bedding. He was having health problems for which he was supposed to have medication and was not given his medication. And at that time, or immediately before that, the case was called for trial. He had a significant number of deaths in his family, three at a time. And it is the position of the respondent that, taken as a whole, those adverse conditions of his confinement in the county jail before he was taken over for trial, and the emotional stress that he was going through because of his family, because of the situation of his family, negated his ability to make a lack of a knowing waiver. Now, of course, when he was brought over for trial, the trial judge took him through a colloquy of asking him, is this voluntary, or do you understand what you're pleading to, et cetera, et cetera. But it's our position that if somebody is, as a result of their mental state, in a condition where they can't make a knowing voluntary waiver, then following up with this colloquy is not going to be any more effective than the initial waiver. If you're not competent to make the waiver in the first place, then you're not competent to affirm that waiver when the trial court takes you through the colloquy of questions about it. These are independent basings for determination, both the ineffective assistance of counsel claim and the lack of a knowing waiver of his right to a jury trial, and we believe that either of those, and certainly both of them together, would constitute sufficient basis for remanding the case to the trial court, vacating the conviction that was entered on the basis of the stipulation of facts, and proceeding with the jury trial. And unless the panel has any questions for me, that concludes my argument. Okay, thank you. Thank you. Mr. Fisher. Good afternoon, Your Honors, Counselor. May it please the Court, Assistant Attorney General Garson Fisher for the people. I'll begin where appellant left off because the record both belies his independent claim that he could not knowingly impose the waiver's right to a jury trial, which the people contend was also forfeited by not being raised as an independent ground in his post-trial motion. But the same record evidence will also demonstrate that the ineffective assistance of counsel claim based on the allegation that counsel improperly pressured the defendant to make that waiver is without basis. The trial court found that the respondent's allegation that counsel applied pressure was unpersuasive, and it is important to note first that the court does defer to the trial court's factual findings in conducting a stricter analysis. But the charge is undermined or refuted by the record in any event. The trial court expressly asked the respondent if he had been promised anything in exchange for waiving his right to a jury trial. The respondent, page 19 of the record, replied that no, he had not been promised anything in exchange for that waiver. Similarly, his claim that he was denied access to his medication is belied by the record. Without prompting, the respondent specifically told the court that he was taking his arthritis medication at the time of the trial, page 14 of the record, and he told the court explicitly that, quote, nothing was interfering with his ability to understand what was happening in the court and the waiver he was making. This claim is further undermined by the respondent's own history with the criminal justice system. This was not the first time that he had engaged in this kind of waiver process. He told Dr. Buff, one of the state's experts, that he regretted having waived his right to a jury trial when he pleaded guilty to the predicate felony of aggravated criminal sexual assault. And it's not credible that a respondent with this background and this history of dealing with the waiver process would blindly stumble into another waiver of that right, particularly given the record evidence that the respondent himself stated to the court that he wasn't promised anything, that he was taking his medication, and that nothing was interfering with his ability to understand what was going on at the time he made that waiver. Respondent's second allegation of ineffective assistance of counsel stems around counsel's alleged failure to investigate the so-called non-sexual nature of his conviction in Arizona. Again, this allegation is unfounded given the reality of respondent's prior conviction. His conviction in Arizona was for molestation of a child. Specifically, he was charged in that case with touching the vagina of a then four-year-old female victim. The appeal in that case was a published decision, and counsel could easily have known the facts of that Arizona conviction from reading that decision and reasonably made the determination that nothing further was to be gained from additional investigation into whether that claim was sexual in nature. It's inconceivable what you might have discovered about that allegation that would have reduced its impact on the SVP determination. But in any event, the record further indicates that counsel did speak with authorities in Arizona to further familiarize himself with the facts of respondent's conviction there. Finally, respondent alleged that counsel was ineffective for failing to properly impeach the state's expert witnesses. Generally, decisions regarding cross-examination and impeachment are considered strategic ones and are generally considered immune from claims of ineffective assistance. But in this case, counsel did vigorously cross-examine the people's experts. Pages 128 through 130 of the record, for example, counsel goes to great lengths to demonstrate that Dr. Heaton's reports were identical for multiple individuals for large sections and thus appeared to be, in counsel's words, can. Additionally, counsel called his own expert witness who testified that respondent was a good candidate for conditional release and did not require secure detention. And given his thorough representation both in cross-examination and impeachment, including along the general lines that respondent sought, namely the seemingly canned nature of the experts, the state's experts' report, as well as presenting a vigorous case on respondent's behalf, it cannot be said that he was objectively unreasonable to pursue these strategies that he chose rather than the one of highlighting minor discrepancies or inaccuracies in the expert's report. Turning to the prejudice problem of the Strickland analysis, respondent argues on page 3 of his reply brief that it was, quote, at least plausible that the outcome would have been different, but for counsel's behavior, needless to say, that is not the standard of understanding when Strickland requires the much heavier burden of demonstrating that there's a reasonable likelihood that the outcome of the case would have been different. But in any event, respondent did not show that he was prejudiced by counsel's alleged failings. Court records alone establish that respondent was convicted of aggravated criminal sexual assault here in Madison County and child molestation in the state of Arizona. Multiple state's experts would have testified that respondent suffered from pedophilia, as well as other mental disorders, and that as a result of those mental disorders, was substantially likely to engage in further acts of sexual violence. And furthermore, respondent's daughter, whom he sexually molested on numerous occasions, was also prepared to testify, as was an eyewitness who would have corroborated her account. Against this, respondent's key witness, Dr. Davis, would have been impeached on the basis that he was unaware of any of the sexual allegations against respondent at the time he formed his opinion, that respondent was unlikely to reoffend, and that the dispositional hearing in the trial court on respondent's own testimony could be incredible. Based on this record of evidence, respondent could not show that he was prejudiced by counsel's conduct. In sum, respondent could not establish that his lawyer's performance was deficient or that he was prejudiced by counsel's conduct. The facts of the record and his conviction in Arizona undermine respondent's claims of ineffective assistance of counsel. Counsel vigorously cross-examined the state's experts and presented a thorough case of his own on respondent's behalf at the dispositional hearing. And in any event, there was overwhelming evidence that respondent was an SVP who required detention in a secured facility for treatment. Unless this Court has any further questions for these reasons, as well as those stated in this brief, people respectfully request that this Court affirm respondent's adjudication as an SVP and detention in a secured treatment facility. Okay. Thank you, Mr. Fisher. Any rebuttal? Mr. Spafford? Mr. Fisher, good evening, Your Honor. That is that given the cumulative and the totality of the facts in this case, the cumulative nature, we're not dealing here with a situation where, with respect to the ineffective assistance of counsel, there's a criticism of one aspect or two aspects of the way that counsel handled the case. But we have a situation where the counsel affirmatively misrepresented the nature of the proceedings, the likely outcome of the proceedings, in order to coerce the respondent, Mr. Davis, to waive his right to a jury trial. And we believe in that situation where you have an actual misrepresentation by counsel and where you have so many cumulative errors in the way that counsel handled the case, that taken as a whole, those would indicate that the case should be remanded for trial. Thank you. Okay. Thank you. Thanks to both of you for your arguments and your briefs. In this case, we'll get you a decision as early as possible.